UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                Case No. 06-20519

GHASSAN SLEWA,                        Hon. AVERN COHN
AMAR SLIWO, and
BASSIL YOUSIF,

    Defendants.
_____/

**MEMORANDUM AND ORDER
DENYING
DEFENDANTS' MOTIONS FOR JUDGMENT OF ACQUITTAL
AS TO AMAR SLIWO AND BASSIL YOUSIF
AND
GRANTING
DEFENDANT GHASSAN SLEWA'S MOTION FOR JUDGMENT OF ACQUITTAL**

I.

This is a criminal case. On June 10, 2008, after a two (2) day jury trial, defendants were each found guilty of conspiring to possess with intent to distribute and to distribute marijuana, 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(vi), and possession with intent to distribute marijuana, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(vi). The jury found more than ten (10) kilograms were involved in the offenses.

Now before the Court are motions for judgment of acquittal on the ground that the verdict was based on insufficient evidence.

The motions as to Amar Sliwo and Bassil Yousif are DENIED. The motion as to Ghassan Slewa is GRANTED.

## II.

As put by the government in the Government's Answer and Brief In Opposition to Defendants' Slewa, Sliwo And Yousif's Motion For Judgment of Acquittal, in arguing for a judgment of acquittal each defendant

> . . . has attempted to isolate his conduct and take it out of the context of the entire case. Reviewing the case in this manner is contrary to the standards set forth by the Supreme Court. In *[Wright] v. West*, 505 U.S. 277 (1992), the Court reiterated the standard set out in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) that "a claim that evidence is insufficient to support a conviction as a matter of due process depends on 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'" and further stated that:
>
>> In *Jackson*, we emphasized repeatedly the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review. We said that "*all of the evidence* is to be considered in the light most favorable to the prosecution," 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis in original); that the prosecution need not affirmatively "rule out every hypothesis except that of guilt," *id.*, at 326, 99 S.Ct. at 2792; and that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume – even it [sic] does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution," *ibid*.
>
> 505 U.S. at 284, 29[6]–97.
>
> Thus, this court must look at *all* of the facts presented at trial and not at each defendant in isolation from the others.

III.

Testifying at trial were two (2) City of Sterling Heights police officers and one Michigan State Police trooper. The police officers testified to what they observed. The State trooper testified to a traffic stop.

The exhibits at trial were photographs of the van in which the marijuana was being transported, and of the marijuana.

IV.

A.

A brief narrative of the evidence follows:

- On February 25, 2006, Sterling Heights police officers were surveilling the Café Moca in Sterling Heights. (Trial Tr. vol. 1, 30–31, 73, June 9, 2008.) One officer observed five or six men in a discussion. (Tr. 31.) The group included brothers Ghassan Slewa and Amar Sliwo. (Tr. 31–32.) After the group dispersed, one of the men parked a van across the street south of Fourteen Mile at Ryan's Palace. (Tr. 31–32, 74.)

- The next day Sliwo drove Slewa to the van in a pickup truck and then Slewa drove the van to Hazel Park Race Track followed by Sliwo driving the pickup. (Tr. 33–34, 74–75.) Slewa parked the van and entered the clubhouse area. (Tr. 34, 75.) He left a short time later in the pickup driven by Sliwo. (Tr. 34–35, 75.)

- Within a few minutes, Jamal Odeesh[1] and Bassil Yousif came out of the track and left in the van, with Odeesh driving. (Tr. 35, 75–76.)

- Odeesh drove in the van with Yousif as a passenger to the Red Apple party store in Highland Park, pulled into the back alley, and went in the back delivery bay. (Tr. 35–36, 76.) While they were inside Sliwo rode around

---

[1]Odeesh was indicted along with Slewa, Sliwo, and Yousif. Odeesh pled guilty.

3

the market as a passenger in an Impala apparently as a look-out. (Tr. 36, 52.) The driver of the Impala was unidentified. (Tr. 53.)

- Odeesh and Yousif returned to the race track in the van, with Odeesh driving. (Tr. 37, 77.) After they entered the track, a police officer looked through the van's rear compartment window and saw that the back of the van was empty. (Tr. 37–38, 77.)

- Odeesh and Yousif left the race track in the van again, with Odeesh driving, accompanied by Sliwo who was driving the pickup. (Tr. 38, 77–78.) They all went to a parking lot at the corner of Oakman and Ford Road in Dearborn, where they met someone who was driving a Grand Prix. (Tr. 38, 78.) Yousif got out of the van and spoke with the driver of the Grand Prix. (Tr. 78.)

- The Grand Prix led the van driven by Odeesh with Yousif as a passenger to Liberty Truck Yard on Wyoming Street in Dearborn. (Tr. 39, 79.) Sliwo, driving the pickup, followed the van. (Tr. 39.) The Grand Prix and the van entered the yard and Sliwo waited outside the yard in the pickup. (Tr. 39, 78–79.)

- A short time later, Odeesh and Yousif left the yard in the van followed by the Grand Prix, and then Sliwo jumped in, driving the pickup behind the other two vehicles. (Tr. 39, 79.) The police officers observed that the van was now weighed down, and big boxes and packages were visible through the window. (Tr. 39, 79.)

- Based on their observations, the police officers requested that a state trooper conduct a traffic stop. (Tr. 40, 80.) The trooper, who was in plain clothes, called in a uniformed trooper to effect the stop. (Tr. 90–91.) The uniformed trooper stopped the van driven by Odeesh, with Yousif as a passenger, on Dequindre near Nine Mile. (Tr. 40, 91.) As the plain-clothes trooper approached the stopped van from the front he smelled marijuana. (Tr. 92.) A search of the van revealed 908 pounds or 413.92 kilograms of marijuana in approximately 40 packages. (Tr. 94.) Odeesh and Yousif were arrested at the scene. (Tr. 42–43, 90.)

4

B.

As to the individual defendants, the following is a description of their respective involvements:

Ghassan Slewa

- was observed at the gathering at the café

- rode in the pickup to the van the following day, with Sliwo driving

- drove the van to the Hazel Park Race Track and entered the clubhouse

- exited the clubhouse and left in the pickup, with Sliwo driving

Amar Sliwo

- was observed at the gathering at the café

- drove the pickup to the van the following day

- drove the pickup to the Hazel Park Race Track

- left the race track driving the pickup with Slewa as a passenger

- was subsequently seen riding around the party store as a passenger in an Impala, apparently as a look-out, with an unidentified driver

- was subsequently seen driving the pickup on Ford Road in Dearborn

- driving the pickup, followed the Grand Prix and the van from Ford Road to the truck yard

- waited outside the truck yard in the pickup while the Grand Prix and the van were inside

- driving the pickup, followed the van and the Grand Prix after they left the truck yard

5

Bassil Yousif

- entered the van as a passenger at the Hazel Park Race Track

- rode in the van as a passenger to the party store

- went into the party store

- went from the party store to the Hazel Park Race Track as a passenger in the van

- left the race track and drove to Oakman and Ford Road as a passenger in the van

- exited the van and talked to someone in the Grand Prix

- rode in the van as a passenger into the truck yard

- left the truck yard as a passenger in the van

- was in the van as a passenger when it was stopped by the state trooper

V.

The jury was instructed as follows:

A.

1.

A "conspiracy" is an agreement between two or more persons to join together to accomplish some unlawful purpose. It is a kind of "partnership in crime" in which each member becomes the agent of every other member.

For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First: that two or more persons, directly or indirectly, reached an agreement to to [sic] possess with intent to distribute distribute [sic] and to distribute marijuana;

6

Second: that the defendant knew of the unlawful purpose of the agreement

Third: that the defendant joined in the agreement willfully, that is, with the intent to further its unlawful purpose.

If you find these three elements to be proven beyond a reasonable doubt then you shall enter a guilty verdict on the appropriate line of the verdict form.

2.

(1)     With regard to the first element – a criminal agreement – the government must prove that two or more persons conspired, or agreed, to cooperate with each other to commit the crime of possession with intent to distribute and to distribute marijuana

(2)     This does not require proof of any formal written or spoken agreement, or that everyone involved agreed on all the details.  But proof that people simply met together from time to time and talked about common interests, or engaged in similar conduct, is not enough.  You can consider these things in deciding whether the government has proved a criminal agreement.  But without more they are not enough.

(3)     What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people, to cooperate with each other to commit the crime of possession with intent to distribute and to distribute marijuana.  This is essential.

(4)     An agreement can be proved indirectly, by facts and circumstances which lead to a conclusion that an agreement existed.  But it is up to the government to convince you that such facts and circumstances existed in this particular case.

(5)     One more point about the agreement. The indictment accuses the defendant of conspiring to commit two federal crimes.  The government does not have to prove that the defendants agreed to commit these crimes.  But the government must prove an agreement to commit at least one of them for you to return a guilty verdict on the conspiracy charge.

3.

(1)    If you are convinced that there was a criminal agreement, then you must decide whether the government has proved that the defendant knowingly and voluntarily joined that agreement.  To convict the defendant, the government must prove that he knew the conspiracy's main purpose and that he voluntarily joined it intending to help advance or achieve its goals.

(2)    This does not require proof that the defendant knew everything about a conspiracy, or all the other members, or that he was a member from the very beginning.  Nor does it require proof that a defendant played a major role in the conspiracy, or that his connection to it was substantial.  A slight role or connection may be enough.

(3)    But proof that the defendant simply knew about a conspiracy, or was present at times, or associated with members of the group, is not enough, even if he approved of what was happening or did not object to it.  Similarly, just because the defendant may have done something that happened to help a conspiracy does not necessarily make him a conspirator.  You can consider these things in deciding whether the government has provided that the defendant joined a conspiracy.  But without more they are not enough.

(4)    What the government must prove is that the defendant knew the conspiracy's main purpose, and that he voluntarily joined it intending to help advance or achieve its goals.  This is essential.

(5)    A defendant's knowledge can be proved indirectly by facts and circumstances which lead to a conclusion that he knew the conspiracy's main purpose.  But it is up to the government to convince you that such facts and circumstances existed in this particular case.

4.

Once you have found the conspiracy to exist and a defendant to have knowingly participated in it, the extent of the participation has no bearing on his guilt of [sic] innocence. The guilt of a conspirator is not measured by the extent or the duration of his participation.  Even if he participated in the

conspiracy to a degree more limited than that of his co-conspirators, he is equally culpable so long as he was in fact a conspirator.

B.

1.

Title 21, United States Code, Section 841(a)(1), makes it a crime for anyone knowingly or intentionally to possess a controlled substance with intent to distribute it.

The elements of this crime are:

First: that the defendant knowingly possessed a controlled substance;

Second: that the substance was in fact marijuana;

Third: that the defendant possessed the substance with the intent to distribute it; and

To "possess with intent to distribute" simply means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.

2.

For you to find a defendant guilty of possession with intent to distribute marijuana as charged in Count Two, it is not necessary for you to find that he personally committed the crime. You may also find him guilty if he intentionally helped someone else to commit the crime. A person who does this is called an aider and abettor.

But for you to find a defendant guilty of possession with intent to distribute marijuana as an aider and abettor, you must be convinced that the government has proved each and every one of the following elements beyond a reasonable doubt:

First, that the crime of possession with intent to distribute marijuana was committed.

Second, that the defendant helped to commit the crime.

And third, that the defendant intended to help commit the crime.

Proof that the defendant may have known about the crime, even if he was there when it was committed, is not enough for you to find him guilty. You can consider this in deciding whether the government has proved that he was an aider and abettor, but without more it is not enough.

What the government must prove is that the defendant did something to help the crime with the intent that the crime be committed.

If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any one of these elements, then you cannot find the defendant guilty of possession with intent to distribute marijuana as an aider and abettor.

## VI.

### A.

The jury, following the instructions and considering the evidence as described above, could find beyond a reasonable doubt:

- it was more than coincidence that Sliwo and Yousif acted in concert

- the activities of Sliwo and Yousif were planned and purposeful and they were engaged in a common mission to pick up a load of marijuana at the truck yard

- given the quantity of marijuana found in the van it was their intention to sell it for a profit

### B.

Clearly the jury verdict as to Sliwo and Yousif was not based on speculation and conjecture, and clearly neither of these defendants was a person simply present at the

scene of a crime.

Between them, Sliwo and Yousif cite four cases that are particularly relevant but nevertheless contrast with the facts here. In United States v. Morrison, WL 581914 (6th Cir. Feb. 22, 2007), the defendant backed someone else's car, in which heat sealed-packages containing cocaine weighing 1.5 kilograms were concealed in the gas tank, from his driveway into his garage but the government presented no evidence that he knew of the existence of *cocaine* in the tank. During a raid of a crack house in United States v. Pearce, 912 F.2d 159 (6th Cir. 1990), the defendants were found inside near small weights of cocaine concealed in a floor drain and in a bag. In United States v. Wright, WL 465164 (6th Cir. Nov. 10, 1993), the defendant house-sat over Thanksgiving weekend for a friend whose house was raided four months later, at which time over one thousand pounds of marijuana were found in the basement. The defendant in United States v. Craig, 522 F.2d 29 (6th Cir. 1975), drove a co-defendant to an apartment where the latter carried a closed box containing drugs inside.

Here the contraband is approximately forty packaged bales of marijuana totaling over nine hundred pounds. The bales filled the van's cargo space directly behind Yousif's head and weighed the vehicle down. As the Wright court noted, "[t]he smell of marijuana is certainly relevant evidence, and courts have pointed to the smell as evidence that the presence of marijuana was obvious." WL 465164, at *4. Yousif was a passenger in the van before and after it was loaded with marijuana and when it was stopped. Yousif got out of the van to talk with the driver of the Grand Prix, who then led the van to the truck yard where the marijuana was. Yousif was in the truck yard while the marijuana was being loaded into the van.

And wherever the van went, Sliwo went—before, while, and after the marijuana was loaded, until just before the van was pulled over. Sliwo drove the pickup, accompanied the van from the race track to the Red Apple, accompanied the van back to the race track, accompanied the van to Ford Road in Dearborn, and then accompanied the van to the truck yard. At the Red Apple, Sliwo rode around in a car as a look-out. At the parking lot on Ford Road, Sliwo drove the pickup back and forth as a look-out. At the truck yard, Sliwo waited outside as a look-out while the van was loaded with the marijuana. When the van went into the truck yard, its cargo area was empty. When the van came out of the truck yard, it was observably loaded down with large packages. Once again, Sliwo followed.

The evidence at trial was sufficient for the jury to make reasonable inferences that both Sliwo and Yousif were guilty of the crimes charged.

C.

On the other hand, while the evidence may have been sufficient for the jury to make a reasonable *speculation* that Slewa was guilty, the evidence was insufficient to make a permissible *inference* of his guilt.

> There is no bright line test to determine when facts amount to only a reasonable speculation and not to sufficient evidence. However, where the evidence taken in the light most favorable to the prosecution creates only a reasonable speculation that a defendant was present at the crime, there is insufficient evidence to satisfy the Jackson standard.

Newman v. Metrish, 543 F.3d 793, 797–98 (6th Cir. 2008).

In oral argument, the government pointed to the "strong dissent" in Newman. But the facts on which the dissent is based contrast sharply with the facts here. The Newman defendant owned one of the murder weapons, had a connection to the murderer's gym bag, had a connection to the second murder weapon, knew the victim, had a motive, and

12

gave an alibi that suggested guilt. Id. at 798–99.

The evidence against Slewa consists solely of the following: (1) Slewa was observed at a gathering with four or five other men, and nothing was heard of their conversation; (2) Slewa rode in the pickup driven by Sliwo to the van; (3) Slewa drove the van, empty, to the Hazel Park Race Track; and (4) Slewa left the race track in the pickup driven by Sliwo.

As to (1), the meeting at which nothing was overheard, a jury instruction was given that directly addressed this piece of evidence: "[P]roof that people simply met together from time to time and talked about common interests, or engaged in similar conduct, is not enough." Here, there was no evidence whatsoever of the topic of discussion; there was only the fact of the meeting. While the jury could certainly consider this piece of evidence, it alone was not enough to convict Slewa of knowledge of, intent to form, or agreement to a conspiracy beyond a reasonable doubt. Nor was it enough to convict Slewa of aiding and abetting because it did not prove intent beyond a reasonable doubt. As the jury was instructed, "What the government must prove is that the defendant did something to help the crime with the intent that the crime be committed."

As to (2) and (4), Slewa's riding to the van with Sliwo and leaving the race track in the pickup with Sliwo, a jury instruction was given that directly addressed these two pieces of evidence: "[P]roof that the defendant . . . was present at times, or associated with members of the group, is not enough, even if he approved of what was happening or did not object to it." All (2) and (4) show are Slewa's association with his brother Sliwo. These pieces of evidence alone or together were not enough to convict Slewa.

As to (3), Slewa's driving of the empty van to the race track, two jury instructions

13

were given that directly address this piece of evidence: "[J]ust because the defendant may have done something that happened to help a conspiracy does not necessarily make him a conspirator" and "[F]or you to find a defendant guilty of possession with intent to distribute marijuana as an aider and abettor, you must be convinced that the government has proved [intent to help commit the crime] beyond a reasonable doubt."

In the brief time that Slewa was driving, the van was empty and his destination was the race track. Moreover, when the van left the race track, it was still empty and Slewa was not driving; Odeesh was driving. Further, when Odeesh drove the van away from the race track with Yousif as a passenger, they did not go directly to Dearborn. They went to the party store in Highland Park, returned to the race track, and then drove to Dearborn. The fact that Slewa drove the empty van from Ryan's Palace to the race track was not enough alone to convict him or conspiracy or of aiding and abetting.

Taken together, all four pieces of evidence were still not enough to convict Slewa of conspiracy or of aiding and abetting. Meeting with a group of men, riding in a pickup truck with a brother who was shown at trial to be a conspirator and an aider and abettor, and driving an empty van to drop it off at a location from which other men drove it several places before picking up the marijuana: these simply do not add up to a showing of knowledge or intent. Even taking all of the evidence against all of the defendants together

14

in the light most favorable to the prosecution, the Court finds that the government failed to prove beyond a reasonable doubt that Slewa possessed the intent required for conspiracy and aiding and abetting.

SO ORDERED.

    s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: December 16, 2008

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, December 16, 2008, by electronic and/or ordinary mail.

    s/Julie Owens
Case Manager, (313) 234-5160